In the Matter of the Assignment of THE TREXLER COMPANY OF AMERICA to the Delaware Trust Company for the benefit of creditors.

In the Matter of Exceptions to the claim of Harry E. Kohn, Trustee in Liquidation of GEORGE A. HUHN, GEORGE A. HUHN, JR., W. H. T. HUHN AND JOHN BELL HUHN, CO-PARTNERS, TRADING AS George A. Huhn and Sons, and of George A. Huhn, individually.

*New Castle, Dec. 23, 1925.*

78

*Robert H. Richards*, and *Boyd L. Spahr*, of Philadelphia, Pa., for exceptants.

*David J. Reinhardt*, and *Peter F. Rothermel, 3d*, of Philadelphia, Pa., for trustee.

THE CHANCELLOR. It is admitted by the solicitors for the trustee that the demand note for $29,968.96 made by the Trexler Company in favor of George A. Huhn & Sons and dated January 28, 1924, is properly allowable. But the other demand notes, all bearing the date of January 24, 1924, made by the same maker in the respective amounts of $31,817.00, $29,500.00 and $22,000.00, the first two to the order of George A. Huhn & Sons and the last to the order of George A. Huhn, and an open account in the amount of $13,000.00 for moneys advanced by George A. Huhn & Sons to the Trexler Company, are disputed.

The claim of the exceptant is based on these three notes and the open account and interest. The trustee does not dispute the correctness of the amounts claimed. It bases its objection on the alleged fact that some time in December, 1923, George A. Huhn in behalf of himself and his firm agreed to accept shares of stock of the Trexler Company in the face amount of the notes and account in full satisfaction thereof, and that nothing is therefore due thereon.

At the time the alleged agreement was made, the notes in question were not in existence. There were notes, however, in the same amounts made by the Trexler Company in favor of the same payees due in February, 1924. On January 24, 1924, nearly a month after the alleged agreement was made, the Trexler Company gave to the Huhns the demand notes in question in place of the notes theretofore outstanding, and these substituted notes were thereafter carried in the books of the Trexler Company among

its liabilities. The open account of $13,000 was likewise carried as a liability.

If Mr. Huhn had in December, 1923, agreed as alleged that the notes and open account should be liquidated by stock, it is difficult to understand why the company should have given new notes in January following and carried such new notes and the open account as liabilities on its books. That there was some discussion upon the proposition that stock should be given in liquidation of the Huhn notes and possibly the open account is doubtless true. But it is to be noted in addition to the foregoing that the directors of the company never authorized the issuance of stock in payment of Huhn's claims, the officer who informed the accountant that Huhn had agreed to take stock was unable to produce to the accountant a statement from Huhn to that effect (the accountant demanding such a statement while the matter was fresh in support of an entry to that effect in the tentative balance sheet as of December 31, 1923, which he was preparing). Mr. Huhn as well as his son deny that such agreement was ever made, and the stock was never delivered or tendered to Mr. Huhn in execution of the alleged agreement.

The defense to these claims is based on an accord and satisfaction.

"An accord is an agreement whereby one of the parties undertakes to give or perform and the other to accept in satisfaction of a claim, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement." 1 C. J. 523.

"A valid accord and satisfaction takes place where some specific article of personal property * * * is accepted in satisfaction of the demand." 1 C. J. 565.

What is sought to be established here by the trustee is that the claims in question were settled by an accord and satisfaction. The burden is on the trustee to support this contention. 1 C. J. 580. That no satisfaction is shown, is not controverted, for the stock was never delivered—it was never authorized by the directors to be delivered. Nor do I think the evidence shows by a preponderance that even an accord was made. Against the direct evidence of the two Huhns corroborated to some extent by the witness Maloney and to a very considerable extend by the circum-

stances of fact before referred to, the trustee offers only the statements of two of the officers of the company, to establish the accord. Without elaborating upon the details of the testimony, it is sufficient for me to say that I find the trustee has not supported its position by that weight of testimony which the burden resting upon it demands.

But even if the accord were made out by the weight of the evidence, still the trustee could not prevail, for the plain reason that the Trexler Company has never performed its part of the agreement by delivering the stock. Until satisfaction, an accord is never binding. 1 *C. J.* 533; *Hosler v. Hursh*, 25 *A.* 52, 151 *Pa.* 415; *Scutt's Appeal*, 43 *Conn.* 109; *Moers v. Moers*, 128 *N. E.* 202, 229 *N. Y.* 294, 14 *A. L. R.* 225. There is no occasion to consider whether a tender of what was agreed to be delivered would constitute a sufficient satisfaction, for no such tender was ever made. Nor do the facts present a case where a promise could be said to have been accepted by the creditor in place of his original claims, for taking the evidence produced by the trustee in its most favorable aspect, what Mr. Huhn agreed to accept in lieu of the notes and open account was not a promise to deliver stock, but the stock itself.

Let an order be presented in accordance with the foregoing, with costs against the trustee.

### On Further Hearing.

When the foregoing memorandum was filed and before an order in accordance therewith was entered, the trustee asked for another hearing, which was granted. At the further hearing, the trustee raised a new point. This was that George A. Huhn & Sons and George A. Huhn individually are estopped from setting up a claim on the notes and, that being estopped, their trustee in liquidation is estopped also. In disposing of this contention, the following memorandum was filed by the Chancellor.

The Chancellor. The defense of estoppel is now raised for the first time. It is based on the following alleged facts: That the tentative balance sheet of the Trexler Company as of December 31, 1923, contained no disclosure of the Huhn notes and open account; that in place thereof it contained an item of indebtedness

of $96,310.00 for "payments received for stock in process of being issued"; that this item represented the alleged agreement of Huhn to accept stock for the indebtedness owed him; and that on the representations contained in the tentative balance sheet, the Penn National Bank of Philadelphia loaned to the Trexler Company $20,000 and the Delaware Trust Company of Wilmington extended a line of credit of $100,000, of which $20,000 was used by the Trexler Company.

In view of this situation it is argued by the assignee in insolvency of the Trexler Company that the liquidating trustee of Huhn & Sons and Huhn individually are now estopped from asserting a claim on the notes and open account. If, the argument goes, Huhn acting for himself and his firm participated in inducing creditors of the Trexler Company to become such on the representations of fact contained in a tentative balance sheet, the doctrine of estoppel would prevent him or his successor in interest from setting up a claim contrary to the representations so made.

If this argument is sound, it is manifest that it matters not whether the true fact was that Huhn had made the agreement to exchange his claims for stock. The present contention therefore does not involve a reconsideration of the question of fact which the previous memorandum disposed of.

If there is any estoppel in the case it is first to be observed that it cannot operate in favor of the Trexler Company, for the simple reason that the statement on the balance sheet indicating that Huhn's claims for notes and an open account were non-existent, as a result whereof the Trexler Company was enabled to secure loans of money, cannot in any wise be said to have led to its injury. On the contrary the false statement if it resulted in securing credits was beneficial to it.

Nor can the false statement give rise to any estoppel in favor of creditors generally. This is for the reason that creditors generally did not become such on the faith of the representations contained in the balance sheet. The utmost extent to which the facts go in justifying the contention of estoppel is that only two of the creditors, viz., the Penn National Bank and the Delaware Trust Company can be argued to have advanced credit on the strength

of the balance sheet. As to all other creditors, it is clear that the claim of the estoppel is entirely without merit.

As to the two banks, how does the matter stand? If the estoppel exists, it is an equity that is peculiar to the lending bank. The controversy involved in the Huhn claims insofar as the matter of estoppel is concerned is between the liquidating trustee representing the Huhn estate on the one side and each of the banks on the other. The adjustment of the equities between these parties based on the doctrine of estoppel can have no effect upon the rights of or the dividends coming to other creditors. If the banks can raise an estoppel against the Huhn claims it would seem that the character of the relief which should be afforded them would be to compel the application of dividends on the Huhn claim to the banks until they were paid in full. In case the Huhn dividend was insufficient to make up the claims of both banks in full, there would then be the problem of adjusting the equities between the two banks. This emphasizes the situation as being one where the contention of an estoppel is peculiar to the two individual creditors, the two banks.

I look, therefore, upon the claim of an estoppel to be peculiarly assertable by the individual creditors in whose favor only it can be said to operate. Now the Penn National Bank has not made a claim in this proceeding. It has filed no claim with the Trexler trustee, nor has it in even an informal way preferred a request that the benefit of the alleged estoppel be accorded to it. That it is aware of these proceedings appears not only from the presence of its assistant cashier on the stand, but as well from the admissions at the argument of the solicitors for the trustee of the Trexler Company. It evidently does not choose to urge the estoppel against the Huhn claim. The matter being one that involves an equity peculiarly its own, I do not feel called on to pass upon it unless it is raised by the bank itself either in this or some other appropriate proceeding if such exists.

Nor on the present state of the record is the Delaware Trust Company in a position to make the contention. The Trexler Company is the only party excepting to the Huhn claim. The Delaware Trust Company has not excepted, nor set up a claim against the Huhn demands. But inasmuch as the Delaware Trust Company

through its solicitor has indicated a desire to file a formal exception or other approrpiate pleading if it should be required, its contention will be treated as though exceptions or pleadings of some kind had been duly filed properly raising it. It may, if it chooses, file such formal exception or pleading for the purpose of the record before an order is finally entered.

For two reasons, I think the Delaware Trust Company cannot claim the benefit of the alleged estoppel. First, it does not satisfactorily appear from the testimony that Huhn was a party to the plan to present the balance sheet to the Delaware Trust Company as an inducement to it in the extension of credit to the Trexler Company. That balance sheet was gotten up primarily for the purpose of showing the financial condition of the company to one Maloney who for certain reasons was interested in knowing its condition. That it was ever authorized by Huhn to be used to secure a loan from the Delaware Trust Company is directly denied by Huhn, and the contrary is not clearly stated by Adair, the only other witness who speaks upon the point. Pages 18, 19 record. The weight of the testimony justifies the inference that the taking of the balance sheet to the Delaware Trust Company and the exhibiting of it to that institution as an inducement to credit, was the act of the president and vice-president of the Trexler Company without suggestion or knowledge on the part of Huhn. It is true that the president of the company testified that he afterwards told Huhn he had gotten the credit and had shown the balance sheet to the Delaware Trust Company. But this was after the event. No authority need be cited to support the proposition that estoppel can never arise against an individual by reason of representations which he neither made, nor induced nor had knowledge of.

The second reason why the Delaware Trust Company cannot claim the estoppel is that it does not appear that it made its loan on the faith of the representations contained in the balance sheet. One of the requisites of an estoppel is:

"That the party claiming the estoppel was misled and induced to enter into the transaction upon the faith of the declaration, act or silence of the other, or upon the fact or relation which he seeks to restrain the other party from denying." *Marvel v. Ortlip, 3 Del. Ch. 9.*

The only testimony bearing on this aspect of the matter is that the president of the Trexler Company showed the balance sheet to the Delaware Trust Company. Whether the loan was made on the faith of the accuracy of the statements disclosed by the sheet, is left to inference.

The facts out of which estoppel arises must, says Chancellor Bates in the case just cited, "be clearly established in evidence." In 21 *C. J.* 1252, the rule is stated to be that—

"Every fact essential to an estoppel must be clearly and satisfactorily proved. Estoppel cannot be based upon mere conjecture; and facts alleged to constitute them will not be taken by inference or intendment."

In the instant case, I am not persuaded by the evidence that that degree of proof has been met which justifies the conclusion that the alleged estoppel has been made out.

Let an order be submitted disposing of said exceptions in accordance with the foregoing and the previous memorandum filed in this matter, requiring the costs of this proceeding to be paid by Delaware Trust Company, trustee under the assignment by The Trexler Company of America for the benefit of creditors.