**ALLIED BUILDERS, INC.,**
**Plaintiff-Appellant,**

v.

**A. R. HEFFRON, Jr., and Loretta F.**
**Heffron, his wife,**
**Defendants-Appellees.**

Supreme Court of Delaware.

Submitted Dec. 15, 1978.

Decided Jan. 11, 1979.

Paul H. Spiller of Kimmel & Spiller, P. A., Wilmington, for plaintiff-appellant.

John T. Owens of Walsh, Monzack & Owens, P. A., Wilmington, for defendants-appellees.

Before HERRMANN, C. J., DUFFY, QUILLEN and HORSEY, JJ.

HORSEY, Justice:

This appeal is from an order of the Superior Court affirming judgment of the Court of Common Pleas in a non-jury trial (1) denying plaintiff-appellant (Allied) recovery on a claim of $2,200 for an alleged balance due from sale of a renovated house in Wilmington, Delaware to defendants-appellees (Heffron) and (2) awarding Heffron on a counterclaim $3,706.34 for cost of repair of defects in the Delaware house and $1,937.90 for expenses resulting from Al-

lied's breach of a related agreement to purchase Heffron's Maryland house.

The Trial Judge made the following findings of fact and conclusions of law following trial:

"The Court finds that plaintiff failed to establish its claim by a preponderance of the evidence; but the defendants established their claim with regard to the roofing and the painting by a fair preponderance of the evidence. Similarly they established plaintiff's obligation and not the third-party defendant to purchase their Maryland property.

Defendants' claim for the washer and dryer is denied and the claim for punitive damages is denied.

I'm allowing the following damages:

For the roof, $875. For painting, $2,831.34. For the ten mortgage payments which the defendant made $1,687.90. For the money defendant paid out-of-hand at the time of sale of their Maryland property, $250. I believe that totals $5,644.24."

Upon appeal therefrom, the Superior Court ruled that there was sufficient evidence to support the Trial Judge's disposition of both the claim and the counterclaim, noting that the Trial Judge "was required to choose between conflicting versions of a past transaction". The Superior Court concluded that the Trial Judge, in reaching his ultimate findings, (1) had found that a $2,200 "credit" given buyer by seller on the Wilmington house sale was final and not contingent on the consummation of the Maryland house sale, which did not occur; and (2) had implicitly (if not explicitly) rejected Allied's defense to Heffron's counterclaim of accord and satisfaction in ". . . awarding specific damages on the counterclaim for items [defects in the Wilmington house] which did not fully develop until long after settlement".

The issues on appeal are (1) whether buyers were liable to seller for the $2,200 "credit" given them at settlement on the Delaware property because the parties had failed to settle on the Maryland property; and (2) whether buyers' counterclaim for later discovered defects in the Delaware

house was barred under the doctrine of accord and satisfaction or merger by deed through the Delaware settlement and the creation and later release of an escrow for correction of certain house defects that the parties agreed existed at settlement.

I

■ Taking up the second question first, we agree with the Superior Court's determination that the defense fails for lack of proof of mutuality of intent of the parties that the escrow set aside at settlement was to cover not only then known defects but all other defects that might be later discovered. *Empire Box Corp. v. Jefferson Island Salt Mining Co.,* Del.Supr., 36 A.2d 40 (1944); *Ashland Coal & Coke Co. v. Old Ben Coal Corporation,* Del.Super., 187 A. 596 (1934). We agree with the Superior Court's finding based on a review of the trial record that, ". . . there is no evidential basis for believing that the Heffrons intended to forsake claims for serious deficiencies, some of which had not been manifested at the time the escrow arrangement was agreed upon."

■ The setting aside of an escrow at a real estate settlement to assure performance before payment in full, notwithstanding transfer of title, is a frequently used device to permit parties to make partial settlement. In contrast, an accord is an agreement to accept something that is new or different from what a party was originally entitled to. *In Re Trexler Co.,* Del. Ch., 132 A. 144 (1926). There can be no accord without the making of a new contract. 1 Am.Jur.2d *Accord and Satisfaction,* § 1 and § 4. The establishment of such an escrow arrangement in and of itself falls far short of proving the creation of a new agreement between parties to accept something different from their original undertaking. We find the evidence wholly insufficient to establish the creation of any new agreement; i. e., accord and satisfaction thereof through performance so as to bar the counterclaim.

■ We also reject a somewhat related contention raised by Allied at argument, namely, that the counterclaim may not lie

because the Delaware house purchase contract was merged by operation of law into the deed that was delivered and accepted at settlement; hence, the counterclaim is based on a contract that no longer legally exists. The doctrine of merger by deed has no application to a claim of this nature which is limited to defects in the renovation of a house and does not concern land questions of title, quantity or land use. 17 Am.Jur.2d *Contracts* § 483, p. 953; 26 C.J.S. *Deeds* § 91c; 23 Am.Jur.2d *Deeds,* § 161, p. 210; *Richmond Homes, Inc. v. Lee-Mar, Inc.,* Ohio Ct.App., 20 Ohio App.2d 27, 251 N.E.2d 637 (1969), holding that builder's covenants to complete a dwelling house to FHA satisfaction and in conformity with state and local building codes are not merged in a deed; *Allen v. Currier Lumber Co.,* Mich.Supr., 337 Mich. 696, 61 N.W.2d 138 (1953); *Re v. Magness Construction Co.,* Del.Super., 117 A.2d 78 (1955) rejecting the contention that a contract for the construction of a new house was "merged" in the deed so as to bar purchaser's suit for damages for failure to comply with the plans and specifications.

Since neither the doctrine of accord and satisfaction nor merger by deed is a bar to defendants' recovery on their counterclaim, it is not necessary to consider their alternative basis for recovery relating to Allied's alleged failure to comply with house defect disclosure requirements of the City of Wilmington Building Code.

## II

As to the first issue, relating to the $2,200 "credit", the question is likewise a factual one. The answer to the question turns on whether the credit was understood to be contingent on the Maryland sale going to settlement under a mortgage take-over arrangement. Allied contends the parties so intended. The Heffrons deny any such intent or agreement. The documents of record on the Delaware house sale do not confirm that the "credit" was contingent. There is no language of contingency in the notation on the settlement sheet, "credit to buyers—$2,200". To prevail on its claim, the burden was clearly on Allied to prove the contingency or tie-in between the Delaware sale "credit" and the Maryland purchase. Allied contends the Trial Court erred in excluding further testimony of the condition underlying the $2,200 "credit" notation on the settlement sheet. However, Allied's record citation does not support its contention; and the Superior Court concluded that the Trial Judge had permitted a "full explanation" of the credit entry. We agree with the Superior Court's finding that there was ". . . sufficient evidential support" for the Trial Judge's denial of Allied's claim. The Heffrons testified that when Allied's President told them, "Just leave it to me and I will work it out", they understood that he was agreeable to purchasing their Maryland property regardless of whether the mortgage could be assumed. The Maryland house sale contract price was set at $2,200 above the mortgage balance. The sale of the Maryland house was made a condition of the mortgage financing provided the Heffrons by a local bank; and Allied's President testified that he notified the Heffrons' lender that their Maryland house had been sold so as to permit settlement to proceed on their purchase of the Delaware house from Allied. The Trial Judge questioned Allied's President as follows:

> "THE COURT: What you are telling me is you knew what kind of a risk you were taking in taking over the house?
>
> THE WITNESS: I don't think I said that.
>
> THE COURT: That is what you want me to infer?
>
> THE WITNESS: I believe I knew the property was a good property.
>
> THE COURT: You felt it wasn't too much trouble for $2200?
>
> THE WITNESS: Not really. It would take time, but it could be resold.

We will not substitute our judgment for that of the Trial Court on such factual issue.

AFFIRMED.